UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARK A. COLYER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-01472-SEB-MJD |
| | ) | |
| MATT JERRETT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on Defendants' Motion for Summary Judgment

[Dkt. 119].  Plaintiff Mark A. Colyer, proceeding *pro se*, has brought this action pursuant

to 42 U.S.C. § 1983 against Defendants Matt Jerrett, Nick Durr, and Joe Garrett, all

police officers with the Anderson Police Department, and the City of Anderson (the

"City"), alleging that the individual Defendants subjected him to excessive force during

the course of his arrest and/or declined to intervene to prevent the use of excessive force

against him, in violation of the Fourth Amendment to the United States Constitution, and

that the City is liable for its failure to properly train, supervise, and discipline its

officers.[1]

For the reasons detailed below, Defendants' Motion is <u>GRANTED IN PART</u> as to

the excessive force claim against Defendant Garrett and the *Monell* claim against the City

---

[1] Mr. Colyer has also alleged several claims under state law, but Defendants have not moved for summary judgment on those claims, so we do not address them further in this Order.

1

and <u>DENIED IN PART</u> as to the excessive force claims against Defendants Jerrett and

Durr and the failure to intervene claim against Defendant Garrett.

## **Factual Background**

At approximately 10:00 p.m. on the night of November 14, 2018, Anderson Police

Officers were dispatched to a local CVS drugstore in response to a request that had been

called in to the 911 dispatcher by the mother-in-law of Plaintiff Mark Colyer ("Mr.

Colyer" or "Colyer"). The caller reported that she had become frightened of Mr. Colyer,

who was currently located inside her residence at 1418 Nelle Street in Anderson, Indiana,

and was requesting that the police accompany her to make sure she could safely return to

her home.[2]

Among the officers who responded to the dispatch were Anderson Police Officers

Matt Jerrett ("Officer Jerrett") who brought with him his K9 dog, Nick Durr ("Officer

Durr"), and Joe Garrett ("Officer Garrett"), each named as a defendant in this lawsuit.

Prior to accompanying Mr. Colyer's mother-in-law to her home, the Officers had

obtained an arrest warrant for Mr. Colyer that had been issued by the Marion Superior

Court (Indianapolis) for felony charges that included Strangulation, Battery Resulting in

Serious Bodily Injury, and Intimidation. A prior attempt to serve this warrant, according

to information provided to the officers, had occurred at the same location four days prior,

but failed when Mr. Colyer had fled from the scene. The Anderson Police Dispatcher

---

[2] According to Mr. Colyer, police used the call from his mother-in-law as a pretext for
attempting to locate him in order to retaliate against him and cause him harm while serving an
arrest warrant, in response to his having evaded service of the warrant a few days prior.

had forewarned the officers on November 14, 2018, that Mr. Colyer might be armed and dangerous.

When the officers arrived at the 1418 Nelle Street accompanying Mr. Colyer's mother-in-law, Officers Jerrett and Durr positioned themselves in an alley next to the residence. Officer Garrett, along with various other officers, positioned themselves at the door to the residence. Mr. Colyer's mother-in-law entered the home and returned quickly outside to inform the officers that Colyer was upstairs. Mr. Colyer's wife, Sarah, was also inside the residence, according to Mr. Colyer. Using her key, his mother-in-law re-entered the residence from the front porch along with the officers. Officers Jerrett and Durr who remained posted outside in the alley saw Mr. Colyer exit the house through a back door, jump a fence and begin to run from the area. He explains that he was not fleeing the police, he simply "did not want to be around [his] crazy mother-in-law" so he "left … to avoid [her]." Dkt 139 at 23. Officers Jerrett (accompanied by his K9) and Durr immediately took up pursuit, shouting instructions to Mr. Colyer to stop while also identifying themselves as police.

Mr. Colyer does not dispute that he fled through the back door of the house into the yard ("kennel area") and jumped a small fence, but he maintains that he never heard any shouted commands from the officer to stop and never ran from them. In his brief in opposition to the summary judgment motion, Colyer states: "I never ran from any officers, no officers gave chase to me. I stopped and surrendered to Matt Jerrett as I was running along side my neighbors [sic] house; once near the street I saw Jerrett and I immediately stopped … and surrendered to Jerrett whom [sic] was standing at the corner

3

of my neighbors [sic] house with the dog at his left side.  He did not notice me until I yelled 'I give up.'  That's when he sic's his dog on me for no reason, no warnings." Dkt. 139 at 1-2.

Continuing, Mr. Colyer maintains that "at the time I surrendered to Matt Jerrett, Matt sic's his dog on me, then Matt kicks me around 4-5 times, he yells 'stop resisting' to indicate to Nick Durr that Im [sic] 'resisting' to justify the excessive force." Dkt. 139 at 5-6.  Further on in his brief, Mr. Colyer states that in response to the "stop resisting" directive by Officer Jerrett, he replied, "'I'm not resisting." 10-seconds [sic] later [Officer] Nick Durr arrives and kicks me directly in the left side of my nose, busting it, … while their dog is biting my left arm, … pulling me into the street.  I yelled 'I'm not resisting' repeatly [sic] to the officers.  Both defendants continued to kick me.  I never resisted them nor the dog.  Their action[s] were unreasonable." Dkt. 139 at 9.

Mr. Colyer emphasizes that he never saw the officers until he surrendered to Officer Jerrett and that the officers never spoke to him until he was kicked in his nose and head, not his chest, first by Jerrett and then by Officer Durr, and there was no "foot chase."  Dkt at 19, 24, 30.

The police officers contend that when they saw Mr. Colyer running and jumping the fence in the backyard, they called to him to stop and when he failed to do so, Officer Jerrett released the K9, which apprehended Colyer.  Having been advised that Mr. Colyer might be armed, Officers Jerrett and Durr ordered Colyer to show his hands, and, when he did not, Officer Durr applied a straight leg kick to Colyer's upper chest and face to

secure compliance.  Mr. Colyer was then transported to the local hospital for treatment of his injuries from the dog bites and the kick.

Thereafter Mr. Colyer was taken into custody and charged in the Anderson City Court with the class A misdemeanor of Resisting Law Enforcement under Indiana Code § 35-44.1-3-1.  On February 5, 2020,  Mr. Colyer pled guilty to the resisting law enforcement charge, was given a one year suspended sentence and placed on probation for one year.  Dkt. 121-1 at 75, 76.

On May 21, 2020, he filed his *pro se* complaint against the City of Anderson and the three officers alleging that they jointly and severally used excessive force in effecting his arrest, in violation of his rights guaranteed by the Fourth Amendment to the United States Constitution, and that the City failed to supervise, train, or discipline the officers for the unconstitutional conduct. Dkt. 1.  Regarding his specific claims against Officer Joe Garrett, Mr. Colyer states:  "I cannot prove Joe Garrett kicked me, but as stated …, he was present and failed to intervene."  According to Mr. Colyer, "[w]hen Jerrett and Durr stopped kicking me, Joe Garrett was there, next to Nick Durr.  He may have kicked me." Dkt 139 at 37.  Included in the Complaint are pendent state law claims for assault and battery and negligence. Thereafter, Mr. Colyer filed successive motions seeking permission to amend his complaint, which were granted, culminating in the Third Amended Complaint filed on March 25, 2022, (Dkt.89), which is now the operative pleading.

Defendants filed for summary judgment on June 16, 2022, arguing that the officers' use of force in apprehending and placing Mr. Colyer under arrest was reasonable under the circumstances, and that, because Colyer cannot establish that it was objectively unreasonable for the officers to have believed the force they used was lawful, all defendant officers are entitled to qualified immunity. In addition, Colyer's plea of guilty to the charge of resisting law enforcement which emanated from this encounter forecloses his §1983 claims. As for the claims against Defendant Officer Joe Garrett, summary judgment is sought on the grounds that Mr. Colyer has admitted that he does not know whether Garrett in fact kicked him during the arrest. Defendants' argument attacking the claims against the City is limited to a single line in their motion: "Since the Officers did nothing wrong, the City likewise as a defendant cannot be held liable." The pendent state law claims were not addressed at all in the motion for summary judgment.

Mr. Colyer opposes an entry of summary judgment on the grounds that material facts are in controversy that can only be properly resolved by a jury after a trial and because the officers have established no entitlement to qualified immunity. He also resists Defendants' argument that his claims are foreclosed by his state court plea of guilty and conviction for the criminal misdemeanor charge of resisting law enforcement. The Defendants filed a reply brief on July 19, 2022. The motion is fully briefed and ripe for a decision. We address each of these issues below.

## Legal Analysis

### I.   Summary Judgment Standard

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  We neither weigh the evidence nor evaluate the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant.  *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

## II.    Discussion

As discussed above, Defendants have moved for summary judgment on the federal claims against them.  We address Plaintiffs' claims against the individual defendants and the City in turn below.

### A.  Section 1983 Claims Against Individual Defendants

The individual Defendants have moved for summary judgment on Mr. Colyer's excessive force claims against them.  The Fourth Amendment guarantees citizens the right "to be secure in their persons … against unreasonable … seizures" of the person. U.S. CONST. amend. IV.  This includes the right to be free from an unreasonable seizure conducted through the use of excessive force by law enforcement officers.  When officers have probable cause to make an arrest, as the individual officers here had, they are prohibited under Fourth Amendment jurisprudence from "employing greater force than is

reasonably necessary to make the arrest." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 724 (7th Cir. 2013) (citation and quotation marks omitted).

Whether the force employed by an officer in effecting a seizure is constitutionally excessive depends on its "objective reasonableness," which is judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and is considered in light of the specific facts and circumstances of that particular case. *Graham v. Connor*, 490 U.S. 386, 396, 399 (1989) (citations omitted). Factors that are relevant to the reasonableness inquiry include, but are not limited to, "the severity of the crime, whether the arrestee poses an immediate threat to the safety of the officers or others, and whether he or she is actively resisting or attempting to flee and evade arrest." *Abbott*, 705 F.3d at 724. We therefore address the claims against the Defendant police officers in this light.

Defendants argue that, when these factors are applied to the case at bar, the objective reasonableness of the force they are alleged to have used against Mr. Colyer is apparent. Officers were at the home of Mr. Colyer, in part based on his mother-in-law's call to the police department requesting an escort to the residence because she was afraid him. Defendants also possessed a warrant for Mr. Colyer's arrest from the Marion Superior Court for felony counts of Intimidation Where Defendant Draws or Uses a Deadly Weapon, and Battery Resulting in Serious Bodily Injury, both class 5 felonies, and Strangulation, a class 6 felony. Mr. Colyer concedes that his outstanding arrest warrant was for charges of domestic battery, intimidation, and pointing a firearm. Colyer Dep. at 19. Additionally, prior to arriving at Mr. Colyer's home, the officers had been

told that Colyer was possibly armed and dangerous and that, a few days before, he had fled from officers attempting to serve the warrant.  These facts are all undisputed.

Mr. Colyer also does not dispute that, when officers arrived at the home on November 14, he ran from the residence.  At the time, Officer Jerrett and his K9 and Officer Durr were positioned in the back of the residence and observed Mr. Colyer exit the back door, jump over a small fence, and continue running on foot.  Although Mr. Colyer contends he was not running from the officers, but instead trying to avoid his mother-in-law, given the fact that Officers Jerrett and Durr had no knowledge of his intent to flea his mother-in-law and had been informed that Mr. Colyer had managed to elude police officers a few days prior, a reasonable officer in their position could have reasonably believed upon seeing him running from the residence directly after their arrival that Mr. Colyer knew police were there to arrest him and that he was again trying to escape.

It is at this point that the parties' stories diverge.  According to Defendants, once Officers Jerrett and Durr saw Mr. Colyer run from the residence, they immediately began to pursue him, identified themselves as police officers, and commanded him to stop.  The officers claim that Mr. Colyer continued to flee even after he had been ordered to stop, at which point Officer Jerrett released his K9 to assist in apprehending Mr. Colyer.  Officer Durr claims that once Mr. Colyer was apprehended, Colyer ignored commands from the officers to show his hands and lie flat on the ground, even after Officer Jerrett attempted to force him to lie flat, at which point Officer Durr administered a single straight leg kick to Colyer's upper chest and face area to gain his compliance.

Mr. Colyer, in contrast, claims that, although he initially ran from the residence, once he saw the officers, he yelled, "I give up," before Officer Jerrett released the K9. Mr. Colyer claims that it was then that the K9 was released and bit him.  According to Mr. Colyer, after he had been subdued, Officers Jerrett and Durr kicked him repeatedly in the face despite the fact that he was not resisting.  Mr. Colyer claims that Officer Garrett was present while Officers Jerrett and Durr were kicking Colyer and while he cannot remember whether Officer Garrett kicked him or not, Garrett took no steps to intervene in curtailing the physical abuse being applied against him.

At the summary judgment stage, we view the facts in the light most favorable to the non-movant, here, Mr. Colyer.  Defendants contend that, in this case, however, because Mr. Colyer pled guilty to resisting arrest in connection with these events, he cannot now dispute any of the facts underlying the charge to which he pled guilty.  It is well-established that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars a plaintiff from maintaining a § 1983 action where judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction.  This means that "*Heck* forbids a prisoner in his civil rights case to challenge a finding in his criminal … case that was essential to the decision in that case; if he insists on doing that, the civil rights case must be dismissed" without prejudice.  *Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011) (citation omitted).

Mr. Colyer, therefore, cannot now deny that he resisted arrest in contradiction of his conviction for that crime.  But "[a] Section 1983 claim for excessive force where the plaintiff has been convicted of resisting law enforcement does not automatically lead to

10

the conclusion that the plaintiff's claim is *Heck* barred." *Brumitt v. Smith*, No. 3:20-cv-00260-TWP-MPB, 2023 WL 403964, at *4–5 (S.D. Ind. Jan. 25, 2023). A plaintiff may claim, for example, "that the force used upon him was excessive in relation to his level of resistance" or that he had stopped resisting at the time the excessive force was used against him "without necessarily challenging his conviction for resisting law enforcement." *Id.* That is what we understand Mr. Colyer to contend here: that although he initially fled from the police, at the time officers released the K9 and repeatedly kicked him in the face, he had stopped resisting and was complying with the officers' orders.

Subsection (a) of Indiana Code § 34-44.1-3-1 sets out the acts that constitute the misdemeanor crime of resisting law enforcement, which include "flee[ing] from a law enforcement officer after the officer has, by visible or audible means, … identified himself or herself and ordered the person to stop …." IND. CODE § 35-44.1-3-1(a); *see also Thrash v. State*, 88 N.E.3d 198, 205 (Ind. Ct. App. 2017) (recounting the acts that constitute the crime of resisting law enforcement under Indiana law). Mr. Colyer could therefore be guilty of resisting arrest based solely on his initial act of fleeing and failing to stop when ordered to do so, but then have stopped resisting prior to the alleged use of excessive force by the officers. Accordingly, his excessive force claim is not *Heck*-barred as his version of the facts supporting his excessive force claim does not necessarily imply the invalidity of his resisting arrest conviction.

Viewing the facts in the light most favorable to Mr. Colyer, as we are required to do at this stage of the litigation, we cannot say that Officer Jerrett's and Officer Durr's conduct was objectively reasonable as a matter of law in light of all of the circumstances.

If Officer Jerrett released his K9 dog on Mr. Colyer and allowed the dog to attack Colyer after he had given himself up and/or Officers Jerrett and Durr did in fact kick Mr. Colyer multiple times in the face after he was already subdued, a reasonable jury could find the use of such force was excessive under the circumstances.  *See, e.g.*, *Hayes v. City of Indianapolis*, No. 1:08-cv-006-DFH-JMS, 2009 WL 700232, at *4 (S.D. Ind. Mar. 16, 2009) ("It has long been well established that a police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders.") (citing *Priester v. Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000) (denying qualified immunity to officer who allowed his dog to attack suspect who was lying on the ground and not resisting); *Ellis v. Wynalda*, 999 F.2d 243, 247 (7th Cir. 1993) (finding that force that is reasonable while suspect poses threat is no longer reasonable once threat is no longer present)).   Moreover, because an individual's right not to be subjected to force when subdued and complying with officers' orders was clearly established at the time of Mr. Colyer's arrest, Officers Jerrett and Durr are not entitled to qualified immunity.

Mr. Colyer concedes, however, that he is not aware of whether Officer Garrett kicked him and has adduced no other evidence in the record that would support a finding that Officer Garrett used any force against him at all.  Accordingly, Officer Garrett is entitled to summary judgment in his favor on Mr. Colyer's excessive force claim.

With regard to Mr. Colyer's failure-to-intervene claim against Officer Garrett, there is a genuine issue of material fact regarding whether Garrett was present at the time Mr. Colyer alleges Officers Jerrett and Durr were using excessive force against him. While Defendants claim that Officer Garrett did not arrive on the scene until after the

alleged excessive force was used against Mr. Colyer, Colyer contends that Garrett was present while Officers Jerrett and Durr were allegedly repeatedly kicking him after he was subdued.  To succeed on a claim for failure to intervene, a plaintiff must prove that the defendant "(1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it."  *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017) (citation omitted).  Because we have held, for the reasons detailed above, that genuine issues of material fact exist precluding summary judgment in Officers Jerrett's and Durr's favor on Mr. Colyer's excessive force claim, Colyer's claim that Officer Garrett was present and failed to intervene to prevent the use of that unconstitutional force therefore also survives summary judgment.

In sum, the conflicting testimony between Mr. Colyer and the individual defendants does not conclusively establish whether Officers Jerrett and/or Durr applied unnecessary force to Colyer; whether Colyer was complying with the officers' orders at the time force was used against him; and whether Officer Garrett was present at that time. It is not within the Court's purview to make credibility determinations or weigh the evidence at the summary judgment stage to resolve these issues and a jury will therefore be required.

### B.  *Monell* Claim Against the City

In addition to his § 1983 claims against the individual officers, Mr. Colyer also alleges a claim against the City under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), alleging that the City failed to properly train, supervise, and/or discipline the individual defendants.  The City has moved for summary judgment

on this claim based solely on its contention that there was no underlying constitutional violation, and thus, no failure to train. Having found that genuine issues of material fact preclude summary judgment in favor of the individual defendants on Mr. Colyer's excessive force claims, summary judgment in favor of the City is not warranted on this basis.

However, a municipality can be held liable under a theory of failure to train only "if it has actual knowledge of a pattern of criminally reckless conduct and there is an obvious need to provide training to avert harm, even if the prior acts have yet to result in tragedy." *Flores v. City of South Bend*, 997 F.3d 725, 733 (7th Cir. 2021) (citations omitted). Mr. Colyer has failed to adduce any evidence that the City was aware of a pattern of criminally reckless conduct on the part of the individual defendants such that the need for additional training was obvious. "Summary judgment is the put up or shut up moment in a lawsuit." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003), *reh'g denied*). Mr. Colyer cannot rely solely on the allegations in his complaint to survive summary judgment. *Id.* Accordingly, the City is entitled to summary judgment in its favor on Mr. Colyer's *Monell* claim.

## III.   Conclusion

For the reasons detailed above, Defendants' Motion for Summary Judgment [Dkt. 119] is <u>GRANTED IN PART</u> as to Plaintiff's excessive force claim against Defendant Garrett and *Monell* claim against the City, and <u>DENIED IN PART</u> as to Plaintiff's excessive force claims against Defendants Jerrett and Durr and failure to intervene claim

14

against Defendant Garrett.  Because Defendants did not move for summary judgment on

Plaintiffs' state law claims against them, those claims also survive.  The case shall

proceed accordingly.

 IT IS SO ORDERED.


Date: _____3/30/2023_____     _____

              SARAH EVANS BARKER, JUDGE
              United States District Court
              Southern District of Indiana


Distribution:

MARK A. COLYER
3613 Oak Lawn Drive
Apt. H
Anderson, IN 46016

Timothy Sean Lanane
Timothy S. Lanane, Attorney at Law
tslanane@sbcglobal.net